E. J. MARINER *v.* W. D. SMITH.

1. EVIDENCE. *Relevancy. Duty of the court.* Where, in a case on trial before a jury, the plaintiff and defendant each maintain a theory, as, for instance, where a depositary is sued for property stolen from him, and the depositor asserts that he was a bailee for hire, and the depositary that he was a gratuitous bailee, the court may allow the introduction of evidence, which upon one theory would be relevant, and upon the other irrelevant; but it is the court's duty, either at the time of its admission, or in the charge, to instruct the jury in regard to its proper application.

2. INSTRUCTIONS TO JURY. In general, error will not be attributed to the court below, unless he is put in error by specific instructions asked and refused. But where a matter arises upon which it is manifest that the court should instruct the jury, the omission to do so will be error.

FROM TIPTON.

Appeal from the Circuit Court.

No record found.

NICHOLSON, C. J., delivered the opinion of the court.

In 1866 W. D. Smith deposited with E. J. Mar-

iner $900 in gold, to be sold if the premium should rise to fifty per cent. before Smith's return from Mississippi in about ten days, and if not to be handed back upon his return. He was gone about ten days, and on his return found that gold had risen to fifty per cent., and that in his absence the deposit had been stolen from Mariner's safe in which it was made.

This suit was brought in the Circuit Court of Tipton county by Smith to recover of Mariner the value of the $900 in gold so deposited and lost. A judgment was rendered in favor of Smith, from which Mariner has appealed to this court.

The facts on which the questions for determination arise are substantially as follows:

Smith lived in Tipton county, and having $1000 in gold, concluded to take it to Memphis and sell it if he could get fifty per cent. premium on it. He was a young man, without experience in business, and having but few acquaintances in Memphis. He was on his way to Mississippi, to be gone about ten days, passing through Memphis, accompanied by Dr. Sherrod, his brother-in-law, when he called at the shoe store of Mariner & Curtis and deposited $900 of his gold with the clerk of the house, neither Mariner nor Curtis being present. The money was counted and the package placed on a shelf in the safe of Mariner & Curtis in the presence of Dr. Sherrod, who was requested by Smith to inform Mariner of the deposit, and of his object in leaving the money. Mariner had lived in Tipton county, and was known to Smith as a good business man. Dr. Sherrod saw Mariner

Mariner *v.* Smith.

the same evening or next morning, and informed him of the deposit at his shoe store, and that Smith requested him to sell it if it got to be worth fifty per cent. premium. Mariner said he would attend to it. Nothing was said about any compensation for the deposit. Smith went directly on to Mississippi, and returned in about ten days and was informed by Mariner on his return that his gold had been stolen, and he was of opinion that it was taken by a colored porter in his store, but he was not able to fix the theft upon him.

The gold was deposited in a package on a shelf in the safe, in the presence of Smith and Sherrod. The safe was of an ordinary kind, having no vault in it, but drawers and shelves, and fastened by a common lock. Mariner & Curtis kept their money and valuable papers in it, and some deposits were also in it by a sister of Curtis' which were also stolen. The safe was in the back part of the room, was not cut off from public access by a railing, and stood open much of the time during the day. No one slept in the room at night.

Several witnesses were examined to prove the habits of business men in Memphis as to how they kept their safes and made their deposits. It was proved that the habit was to keep their safes locked during the day, and to have them cut off or enclosed by a railing; they usually had two doors, the inner one in which money and valuables were kept was always kept locked.

The habit of merchants was to deposit in bank all

moneys left under their control. Bank safes were safer than those of merchants.

Defendant objected to so much of the testimony of the several witnesses as showed how the merchants in Memphis kept their safes and made deposits in banks, because it was not shown that they were bailees of like character with the defendant without hire, and because the same was irrelevant, which objection was overruled by the court and the testimony admitted.

The first question is, whether the court erred in admitting this testimony? The objection assumes that defendant was a bailee without compensation, and therefore that the testimony could not be relevant to the issue in the case. Whether the defendant was a bailee for hire, or a simple gratuitous mandatory, was a question for the jury, and upon their determination of this question depended not only the relevancy of the testimony, but the degree of care and diligence which defendant was bound to exercise in order to avoid responsibility for the loss. If the jury should find that defendant was bailee for hire, then the custom of business men who were in the habit of receiving deposits for hire would be competent in determining whether defendant exercised the care and diligence which ordinarily prudent men, similarly situated, exercise in keeping deposits received by them on hire. In this view of the fact, as to the character of defendant's bailment, the testimony was competent and relevant, and therefore admissible. The court could not assume that defendant was not a bailee for hire, and on that ground reject the the testimony. But as

it was a material issue in the case whether defendant was a bailee for hire or a gratuitous bailee, and as the testimony as to the habits of business men was distinctly objected to by defendant on the ground that he claimed to have been a gratuitous bailee, it was incumbent on the court, either when the testimony was admitted, or in his charge to the jury, to instruct them as to the proper application of the testimony.

This was not done, but the testimony was allowed to go to the jury without any explanation as to the particular phase of the facts in which it would be relevant, and in which not.

It is true that no special request was made to the court for specific instructions as to the proper application of the law to the testimony, and it is a general rule, that error will not be attributed to the court unless he is put in error by specific instructions asked and refused. But in this case the issue made by the parties, and by the proof, made it so manifestly necessary that the jury should be instructed as to the proper application of the testimony objected to, and especially in view of the fact that defendant had objected to the testimony on the ground that it was not relevant. Upon his theory of the case, we think it was error in the court not to give the necessary instructions to enable the jury to make proper application of the testimony.

If the jury came to the conclusion that defendant was a gratuitous bailee, we cannot see that the testimony as to the habits of business men in Memphis, having no reference to such bailments, may not have

Mariner v. Smith.

influenced the jury in determining whether defendant was guilty of such negligence, as a gratuitous bailee, as would make him liable for the loss of the gold.

In the next place, it has been ingeniously and earnestly argued that the charge of the court as to the difference in the degrees of care and diligence required of bailees for hire, and gratuitous bailees, to exempt them from responsibility for loss, is erroneous.

After carefully examining the charge we think it is in substantial conformity with the opinion delivered in the case when it was before this court at a former term.

The charge on these points would be more satisfactory if more explicit in stating the degrees of care and diligence in the two classes of bailments, but, as already stated, we think the distinction is laid down with substantial accuracy.

But for the error in regard to the testimony already referred to, the judgment is reversed and a new trial awarded.