## ROTHS CENTRAL GARAGE v. H. J. HOLMES.

Western Section. December 6, 1929.

Petition for Certiorari denied by Supreme Court, March 3, 1930.

E. W. Braden and Wilson, Gates & Armstrong, all of Memphis, for plaintiff in error.

Stickley & Fitzhugh, of Memphis, for defendant in error.

HEISKELL, J.  This suit was instituted by the plaintiff against the defendant, a bailee for hire, for alleged damage done to plaintiff's automobile while in the defendant's possession on March 12, 1928.

The defendant is a Tennessee corporation and maintains and operates a public garage at 206 Union avenue, in the City of Memphis, for the care, storage and safe keeping of automobiles for hire.

It occupies a five story, fire proof building with its entrance facing on Union avenue. The second and third floors of the building are used for the storage of cars of regular monthly customers.

The usual and customary method of handling automobiles that are placed there for storage is that the car is driven in by the customer and left on the first floor. The cars are then driven to elevators and carried to their regular floor. Each floor is in charge of a floor boy whose duty it is to take the car from the elevator, park and clean off the car. The floor boy stays on duty all day. The garage handles an average of around 250 cars a day.

The plaintiff was a regular customer of the defendant and had been for a period of probably a year and a half before the damage occurred. He paid a monthly storage charge of $7.50 a month. The plaintiff's regular course of dealing with the defendant was to drive his car to defendant's garage in the morning and leave it there during the day, and to call for it when he went home in the afternoon. On the morning of March 12, 1928, the plaintiff drove his automobile in and left it on the first floor of the defendant's garage. The plaintiff testified that the car, at that time, was in good running condition. The plaintiff's residence is located about twelve blocks from the defendant's garage. Plaintiff's car on the morning in question was placed in its regular storage place on the third floor. It was wiped off and parked by the floor boy in charge of that floor. The car remained on the third floor until about four o'clock on the afternoon of March 12th, when it was taken to the first floor, as was the general practice for this car. This was done according to the general practice of handling the plaintiff's car because he had requested it and it was known as one of the "early cars."

About five o'clock on the afternoon of the same day, the plaintiff's wife called for the automobile at the defendant's garage. A colored boy first delivered to her a Buick car. She told him that was not her automobile. He then delivered to her the Packard automobile which was on the first floor of the garage. When the car was delivered to her it was throbbing and making considerable noise. She drove it out of the garage, but when she reached the middle of Union avenue the car stopped and would not run. When they again started the motor of the car it made a terrific noise like a threshing machine. The car was pushed to the side of the street and plaintiff's wife then went to the telephone and called up Newsum's Service Garage and one of

the men from the Service Company came to the car and finally got the car started, and after about two hours finally managed to get the car to plaintiff's home some two miles away.

The car was left that night under the porte cochere of plaintiff's home, and the following morning, March 13th, was towed to the garage of the Jerome P. Parker-Harris Company, Packard automobile dealers. When the motor was taken apart next morning by Mr. Oglesby, the foreman of the Jerome P. Parker-Harris Company, he found in the crank case about a teacup or a teacup and a half of emery dust, or some valve grinding compound. Upon examination it was discovered that the cylinder blocks, crank shaft and piston rings were badly cut and scored. In fact, the motor of the car was completely wrecked, by reason of this emery dust or valve grinding compound.

The plaintiff's proof showed the car in good condition when delivered to the garage on the morning of March 12th. There is no proof in conflict with this. and it may be taken as conceded by the defendant as also the fact that the injury to the car was caused by the foreign substance found in the motor.

There were four white and about seventeen negro employees working in the garage. Lucius Taylor, a colored boy, had charge of the third floor. Defendant's proof showed that the plaintiff's car was handled according to the regular custom of the garage. Plaintiff did not have the car repaired, but traded it in on another car.

At the conclusion of all the proof, the defendant moved the court for a directed verdict, which being overruled and a verdict rendered for plaintiff for $632.50, the defendant has appealed.

The first and second assignments are that there is no evidence to support the verdict and that the court should have granted defendant a directed verdict. It cannot be said there was no evidence. The proof that the car of plaintiff was delivered to the bailee in good order and was returned in a damaged condition made out a prima facie case. If defendant had introduced no proof, the plaintiff would have been entitled to a verdict, and even though the defendant did introduce proof, the jury could have found the prima facie evidence sufficient or the whole evidence sufficient to warrant a verdict for plaintiff. The authorities cited in support of the assignments do hold that in order to fix liability on the bailee there must be more than a mere inference of negligence. That where the damage could just as well have taken place while the car was in the possession of plaintiff as that of defendant, there could be no recovery. Here, however, there is evidence that the cause of injury was not in the motor when delivered to the garage, and was in it when returned. It is not left to conjecture or mystery as to what caused the injury. It is also contended that there was no evidence of loss, because the plain-

tiff received full value for his car. This was on a trade in for another car. Defendant contends that plaintiff valued the car before the injury at $1500 or $1600 and that this much was received for it in trade for another car. Plaintiff replies that he traded in his injured Packard for a Pierce Arrow which was just on the eve of a $600 reduction and that he got the benefit of this reduction in the trade, and that besides a trade in valuation is not equivalent to an actual value. We do not see that all this makes out the contention that there is no evidence to support the verdict.

The third assignment is that the court erred in charging the jury as follows:

"Now, gentlemen, if you find these alleged facts to be true, from the preponderance of the evidence, then the court charges you that that makes out a prima facie case in favor of the plaintiff, and you will find for the plaintiff and return your verdict for him, unless you find from the preponderance of the evidence in the case that the defendant was in the exercise of ordinary and reasonable care in taking care of said automobile whilst it was in its possession as a bailee for hire during that day of March 12, 1928."

There is no objection to the first part of this excerpt from the charge, but the objection is that it puts upon the defendant the burden of showing the exercise of ordinary and reasonable care by a preponderance of the evidence. Counsel for plaintiff accepts defendant's construction of the charge and defends it as the law. The contention for plaintiff is that when the bailor made out the prima facie case that then the burden of proof shifted and was upon the defendant to show the exercise of ordinary and reasonable care in handling the car.

The contention of defendant is that while the proof of delivery of the car in good condition and its return damaged does make out a prima facie case which creates a presumption of negligence which supports the burden of proof in favor of plaintiff down to that stage of the case and will warrant a verdict for plaintiff in the absence of proof by defendant, yet the burden of proof never shifts but remains upon the plaintiff to the end of the case. That the prima facie case or establishing the res ipsa loquitur, merely imposes upon the defendant the burden of proceeding or going forward with the evidence, and when the defendant has done this and introduced evidence tending to show ordinary care, then upon the entire evidence the burden rests and remains upon the plaintiff by a preponderance of the proof, to show that the bailee has been guilty of negligence. Unquestionably there is conflict and confusion in the authorities on this question. Even in the authorities cited by counsel for plaintiff, it is conceded that there are cases in some jurisdictions which support the conten-

tion of defendant in the present case and after examining the cases relied on in both briefs, we are of the opinion that this state has aligned itself with those that hold to the rule as contended for by defendant. Gill v. Brown, 130 Tenn., 174; North Memphis Savings Bank v. Union Bridge & Const. Co., 138 Tenn., 161; Noel v. Schurr, 140 Tenn., 245.

Corpus Juris, Vol. 6, p. 1158, Sec. 160 says the great weight of authority is in favor of the rule that the prima facie case carries the burden to that point in the case and imposes upon the defendant the burden of proceeding or else submitting to the presumption of negligence, but when the defendant does introduce evidence, the burden of proof or risk of non-persuasion remains on the plaintiff to the end of the case. Citing among other cases, Sanford v. Kimball, 106 Me., 355, 76 Atl., 890 and Hanes v. Shapiro, 168 N. C., 24, 84 S. E., 33. To the same effect are the following: Miles v. Hotel Company, 289 Ill., 320, 124 N. E., 599; Hansen v. Oregon-Washington R. & Nav. Co., 188 Pac., 963.

Noel Co. v. Schurr, 140 Tenn. 245 is cited for plaintiff as well as for defendant, but in that case the defendant did not seem to go forward with the evidence, did not offer any proof, at least the court seems to treat the prima facie case of plaintiff as conclusive while stating the law to be that the burden of proof does not shift. To say the least, that case cannot be taken to change the rule announced in earlier cases.

The fourth assignment makes the same objection to another portion of the charge and is covered by what has been said as to the third assignment. Before disposing of these assignments we wish to consider the ninth assignment which is as follows:

"The court erred in refusing the following special instruction requested by the defendant in the presence of the jury and before the jury had retired and after the giving of the general charge:

"I charge you that you cannot consider the evidence of detective Hewlett that the witness Lucius Taylor, told him that Sweat had come to the third floor and asked for the plaintiff's automobile, as evidence of matter asserted, but its only value is to impeach the testimony of Lucius Taylor."

Hewlett testified that Lucius Taylor told him that on Monday, March 12th, Mr. Sweat came up on the third floor of the garage and asked for Mr. Holmes' car. That afterwards Taylor retracted this statement and said it was before the 12th that some one came up and inquired for Mr. Holmes' car, but he did not remember who it was. Proof had been introduced to show that Sweat entertained hard feelings toward Holmes. That he had painted another car for Holmes and had not been paid for it. The theory that Sweat maliciously put the emery powder in the car was the most tangible explanation of the mystery. Then the court had charged the jury that if they

believed any employee of the defendant had wilfully and maliciously placed a foreign substance in the crank case of plaintiff's car, causing the damage, that they should find for plaintiff. The special request was presented before the jury retired. The refusal to give it was dangerously close to telling the jury they could consider the testimony of Hewlett as going to show that Sweat had wilfully and maliciously caused the damage and therefore they must find for plaintiff. As going to show what Sweat did, the testimony of the detective was pure hearsay. It was competent solely to contradict Lucius Taylor. Being competent for one purpose, it could not be objected to, but the court should have given the charge requested, limiting the effect of the testimony.

In Mariner v. Smith, 66 Tenn. 427, even without a special request such as we have in the present case, the court said in admitting testimony competent for one purpose and not for another "it was incumbent on the court, either 'when the testimony was admitted, or in the charge to the jury, to instruct them as to the proper application of the testimony." On the sole ground that the court failed to do this, an otherwise satisfactory verdict was reversed. The admission of this hearsay testimony, without qualification, as if affirmative proof that Sweat had done the damage, was reversible error and this assignment must be sustained.

Whether or not the case should be reversed on the third and fourth assignments alone as it must be reversed and remanded under the ninth assignment, the third and fourth assignments should be sustained to the end that on another trial a charge more technically correct may be given as to the burden of proof.

Defendant's fifth and sixth assignments are not well taken. The rule invoked is applicable in case of torts but not in cases of bailment such as this. The rule that a master is not liable for the wilful and malicious acts of the servant is not applicable to a case of this kind. Corbett v. Smeraldo, 102 Atl., 889; National Liberty Ins. Co. v. Sturdivant-Jones Co., 52 A. L. R., 705.

Assignments seven and eight go to the question of the measure of damage. We find no error in this regard in the charge given or the refusal of the charge requested.

Assignments ten, eleven and twelve object to testimony admitted and a charge refused as to the question of usable value. We find no error pointed out and these assignments are overruled.

Assignment thirteen is that the verdict is excessive. As the case is to be remanded for a new trial, it is not necessary to pass on this last assignment.

For the reasons given, the case is reversed and remanded for a new trial. The plaintiff will pay the costs of the appeal.

Owen and Senter, JJ., concur.