## GENERAL CONTRACT PURCHASE CORPORATION v. CONNER et al.—126 S. W. (2d) 347.

Western Section. June 30, 1938.

Petition for Centiorari Denied by Supreme Court, Feb. 4, 1939.

(1)

2

Steele & Steele, of Ripley, for complainant.

Craig, Durham & Carney, of Ripley, and Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, for defendants.

SENTER, J. The original bill in this cause was filed by the complainant against the defendants, C. C. Conner and his wife, Mrs. Eloise Conner, and two trustees under a trust deed, seeking to set

aside two certain deeds executed by C. C. Conner to his wife, Mrs. Eloise Conner, to two certain tracts of land situated in Lauderdale County, Tennessee. One of the tracts contained about 223 acres and the other contained 100 acres of land.

The bill alleges that C. C. Conner, at the time these alleged conveyances were made to his wife, was then largely indebted to complainant, growing out of certain collections made by C. C. Conner for the complainant under certain contracts set out in detail in the bill and for which the defendant Conner, has not accounted to complainant. The bill alleges that said two conveyances made by Conner to his wife were made without any valuable consideration; that no actual consideration ever passed between C. C. Conner and his wife for said conveyances; that said conveyances were executed at a time when the defendant, C. C. Conner was insolvent and was largely indebted to complainant, and after complainant had demanded settlement of C. C. Conner, and after C. C. Conner had requested an extension of time to make settlement with complainant, and after complainant had denied this request for an extension of time to settle the indebtedness; that said conveyances were made secretly and as a result of covin, collusion, and were contrived in fraud and collusion between the defendants, C. C. Conner and Eloise Conner, for the fraudulent purpose of hindering, delaying, and defeating the complainant in the collection of its said just debt.

The bill alleges that the defendant, Eloise Conner, took said conveyances from her said husband well knowing the fraudulent purpose and character thereof, and with the intent to aid her husband in defrauding the complainant of its said just debt.

Subsequently there was filed an amended and supplemental bill adding certain other allegations and charges to those contained in the original bill. The original and supplemental bills sought to have said conveyances so made by C. C. Conner to his wife, Eloise Conner, set aside as a fraud upon complainant, and to have said property subjected to the payment of the said indebtedness of the defendant, C. C. Conner, to complainant, amounting to $7,215.30. The bill also sought a decree for a judgment against C. C. Conner for the said indebtedness.

The two trustees in the trust deeds were made parties because of a prior encumbrance debt of $500 on the 100-acre tract of land conveyed by C. C. Conner to his wife, and to have the sale of said 100 acres made subject to the prior encumbrance thereon. The bill also sought an attachment, attaching said two tracts of land and also certain injunctive relief, enjoining all the defendants from selling said land or otherwise disposing of the same.

The defendants filed separate answers. By the answer of C. C. Conner all allegations with respect to fraud in the matter of making said conveyances were denied, and by his answer he denied that he

4

was indebted to complainant as alleged in the bill, and denied that complainant was entitled to any of the relief sought.

By the answer of the defendant, Mrs. Eloise Conner, she denied all allegations contained in the bill with respect to the alleged conveyances, and denied that she had entered into any fraudulent collusion with her said husband to hinder, delay, or defeat the collection of said alleged indebtedness to complainant. She denied that said conveyances were not made for a valuable consideration, but she did not set out in her answer, nor did the defendant, C. C. Conner, set out in his answer, of what the consideration for said conveyances consisted. By their separate answers the defendants denied that complainant was entitled to have said attachment sustained and to have said property subjected to the payment of any debt.

We deem it unnecessary to make a more detailed statement of the pleadings, but the pleadings will be later referred to in this opinion in so far as it becomes important or material.

After numerous continuances, the cause came on to be heard. The defendant had demanded a jury to try the issues of fact made by the pleadings, and the following issues of fact were made up under the direction of the Chancellor and submitted to the jury:

"Q. 1. Is the defendant, C. C. Conner, indebted to the complainant, and if so in what amount?

"Q. 2. Was the conveyance from C. C. Conner to his wife, Eloise Conner, of the 223 acres of land in Lauderdale County made on the 26th day of September, 1927, fraudulent in law?

"Q. 3. Was the defendant, C. C. Conner, indebted to complainant on the 26th day of September, 1927, the date that he conveyed the 223 acres of land to his wife and if so in what amount?

"Q. 4. Was the defendant, C. C. Conner, embarrassed by his indebtedness when he conveyed said 223 acres of land to his wife?

"Q. 5. At the time the said C. C. Conner conveyed said 223 acres of land to his wife had the complainant ascertained the amount of indebtedness owing to it by him, and was complainant insisting that the defendant, C. C. Conner, pay the same?

"Q. 6. Was the conveyance of the 223 acres of land by C. C. Conner to his wife made without a fair consideration?

"Q. 7. Was the conveyance of the 223 acres of land made by C. C. Conner to his wife made for an adequate consideration?

"Q. 8. Was the conveyance of the 223 acres of land made by C. C. Conner to his wife, Eloise Conner, for the purpose of hindering, delaying and defrauding his creditors and especially the complainant?

"Q. 9. Was the defendant, C. C. Conner, indebted to complainant, on the 5th day of September, 1928, the date on which he conveyed the 100-acre Verser tract of land to his wife and if so in what amount?

"Q. 10. Was the conveyance of the 100 acre Verser tract of land by C. C. Conner to his wife fraudulent in law?

"Q. 11. Was the conveyance of the 100 acres of land by C. C. Conner to his wife made without a fair consideration?

"Q. 12. Was the conveyance of the 100 acres of land made by C. C. Conner to his wife for an adequate consideration?

"Q. 13. Was the conveyance of the 100 acres of land made by C. C. Conner to his wife for the purpose of hindering, delaying and defrauding his creditors and especially the complainant?

"Q. 14. Was the conveyance of the 223 acres of land made by C. C. Conner to his wife made secretly and in haste?

"Q. 15. Was the conveyance of the 100 acres of land made by C. C. Conner to his wife made secretly and in haste?

"Q. 16. What the reasonable cash market value of the 223 acre tract of land on the 26th day of September, 1927, the date the same was conveyed by C. C. Conner to his wife?

"Q. 17. What was the reasonable cash market value of the 100 acre Verser tract of land on the 5th day of September, 1928, the date the same was conveyed by C. C. Conner to his wife?

"Q. 18. Did the defendant, C. C. Conner, on or about September 21, 1927, represent to complainant that he did not own any property and was insolvent?

"Q. 19. Did the defendant, C. C. Conner, on or about September 21, 1927, conceal from the complainant that he owned the tract of 223 acres of land in Lauderdale County?

"Q. 20. Has the defendant, C. C. Conner, continued to retain possession of and collect the rents from said 223 acres of land since the conveyance of same to his wife?

"Q. 21. Has the defendant, C. C. Conner, continued to retain possession of and collect the rents from said 100 acres of land since the conveyance of the same to his wife?

"Q. 22. At the time C. C. Conner conveyed the 223 acre tract of land to Mrs. Eloise M. Conner, was he indebted to his wife, Mrs. Eloise M. Conner?

"Q. 23. At the time C. C. Conner conveyed the 100 acre tract of land to Mrs. Eloise M. Conner, was he indebted to his wife, Mrs. Eloise M. Conner?

"Q. 24. Did C. C. Conner convey the 223 acre tract of land to his wife, Eloise M. Conner, as payment on a debt which he owed to her?

"Q. 25. Did C. C. Conner convey the 100 acre tract of land to his wife, Mrs. Eloise M. Conner, as payment on his debt to her?"

The jury answered the above questions as follows:

To the first question the answer was "yes, $7,215.30."

To the second question the answer was "yes."

To the third question the answer was "yes, $7,215.30."

To the fourth question the answer was "yes."

To the fifth question the answer was "yes."

To the sixth question the answer was "yes."

To the seventh question the answer was "yes."

To the eighth question the answer was "yes."

To the ninth question the answer was "yes."

To the tenth question the answer was "yes."

To the eleventh question the answer was "yes."

To the twelfth question the answer was "No."

To the thirteenth question the answer was "yes."

To the fourteenth question the answer was "yes."

To the fifteenth question the answer was "yes."

To the sixteenth question the answer was "$7,805.00, $35.00 per acre."

To the seventeenth question the answer was "$3,500.00, $35.00 per acre."

To the eighteenth question the answer was "yes."

To the nineteenth question the answer was "yes."

To the twentieth question the answer was "The defendant collected rents from said 223 acres of land for one year following conveyance of same to his wife."

To the twenty-first question the answer was "yes."

To the twenty-second question the answer was "We can not agree."

To the twenty-third question the answer was "We can not agree."

To the twenty-fourth question the answer was "We can not agree."

To the twenty-fifth question the answer was "We cannot agree."

Upon these answers the defendants moved the court to declare a mistrial in the case, as set out in their written motion, on the ground that the jury did not answer the issues of fact in questions No. 22, No. 23, No. 24, No. 25, but disagreed on the same and stated in answer to each of said questions in writing, "We can not agree."

The Chancellor overruled and disallowed the motion of defendants for a mistrial and to which action of the court the defendants excepted. Whereupon, the defendants moved the court to set aside the findings of the jury on the issues of fact and to grant a new trial on said issues upon the grounds set forth in their motions for a new trial, which said motion for a new trial was by the court overruled and disallowed, and to which action of the court the defendants excepted.

After overruling the motion for a new trial made by the defendants, the Chancellor decreed that the allegations and charges contained in the original and amended and supplemental bills were sustained by the evidence; and decreed that said two conveyances made by C. C. Conner to his wife to the said two tracts of land were fraudulent in law and in fact; that said conveyances were made by the defendant, C. C. Conner, to his said wife, defendant Eloise Conner

with the fraudulent purpose and intent, both in law and in fact, to hinder, delay and defeat the collection by complainant of its said debt. The Chancellor decreed a judgment in favor of complainant and against the defendant, C. C. Conner, for the amount of the indebtedness, $7,215.30, with interest thereon from the date of the decree, and ordered the property sold and the proceeds of the sale, after payment of the costs, etc., be applied to said judgment.

The decree sets out the conclusions of fact and references to the jury verdict and answers to the several issues and questions submitted to the jury.

From the decree of the Chancellor the defendant, Mrs. Eloise Conner, prayed and was granted an appeal to this court, which appeal has been duly perfected and numerous errors assigned.

The first assignment of error is directed to the action of the Chancellor in overruling the motion of defendant to declare a mistrial and in overruling defendant's motion for a new trial because of the failure of the jury to answer the issues of fact in questions Nos. 22, 23, 24, and 25, wherein the jury answered these issues, "We can not agree." The second assignment of error is directed to the action of the court in the charge to the jury, in response to an inquiry made by the jury to the Chancellor, which was as follows:

"What was your Honor's final ruling on those notes? Did you rule them in or out?"

Whereupon the Chancellor stated to the jury:

"He (the Court) could not tell them what the evidence was; that there were a lot of questions asked of the witnesses and objections made concerning these notes; some of them were sustained and some of them overruled; and that the Court could not discuss the evidence with the jury; and that the jury would just have to remember that themselves."

The third assignment of error complains of the action of the court in giving in charge to the jury special requests submitted by the complainant. This special request will be referred to later in this opinion. The fourth assignment complains of the action of the Chancellor in refusing to give in charge to the jury the defendant's special request No. 1, made after the general charge to the jury and before the jury retired. This special request will also be referred to later in this opinion. By the fifth assignment it is contended that there was no evidence to support the answers of the jury to questions 2, 6, 7, and 8 as to the 223 acre tract of land and issues 10, 11, 12, and 13 as to the 100 acre tract; and there is no evidence to support the decree adjudging the two conveyances fraudulent in law and in fact and ordering the same subjected to the indebtedness of C. C. Conner to the complainant.

By the sixth assignment of error the contention is made that the

Chancellor in denying the motion of the defendants for a new trial failed to exercise the function and duty of the court as the thirteenth juror to himself weigh the evidence and pass upon the issues of fact and to decide whether the jury verdict and their answers to the respective questions was supported by the preponderance of the evidence. It being contended under this assignment that the court denied said motion under an erroneous conception of the duty of the court in this manner, and that his statement in disposing of the motion for a new trial showed that he did not constitute himself as the thirteenth juror for the purpose of weighing the evidence to determine its preponderance.

For a proper consideration of the several questions presented by the assignments of error, it becomes important that we review the material evidence with respect to the material facts as shown by the record. It is not denied that the defendant, C. C. Conner, made the written application to complainant for the purpose of procuring complainant to enter into the contract to purchase from him from time to time conditional sales contracts, notes, etc., growing out of the sale of the merchandise in which he was then engaged in handling and selling on the installment plan or conditional sales plan. In this application he undertook to set out in response to the questions contained in the application his assets. In the application he only set out $4,000 in cash that he had put aside to be used in connection with this comparatively small business in which he was then engaged. In answer to the question as to what real estate he owned, his answer was "none." At that time he was the owner of the 223 acre tract of land located in Lauderdale County, and which tract he conveyed to his wife by deed dated September 26, 1927. By so answering the question, he concealed from the complainant that he was the owner of the 223 acre tract of land at the time he made the application for the contract with complainant.

Acting under the contract, the complainant purchased a considerable amount of installment notes, accounts receivable, etc., from the defendant, Conner. Under the terms of the contract these accounts, notes, etc., were to be placed in the hands of the Conner-Kimball Electric Co., for collection. Conner had disclosed to complainant in the application and in the contract that he was the sole proprietor of that business.

In the latter part of August, 1927, it was discovered that Conner's employee, or agent, Kimball, had collected large sums of money on these accounts and notes, which he failed to remit to complainant or account for, and it was not until after this shortage was discovered that an audit was made of the books and accounts of the Conner-Kimball Electric Co. It was then ascertained that Conner was indebted to complainant in the sum of $7,215.30, covering items collected and not remitted by his employee Kimball.

No denial is made, except in the pleadings, that Conner was liable for this shortage. Nor is there any contention now made that Conner was not liable for said shortage, and no appeal was prayed or granted to Conner from the decree of the Chancellor in holding him' liable for said sums, and decreeing judgment against Conner for said sum.

It is shown without conflict in the evidence that on September 12, 1927, Conner had his St. Louis attorney to write complainant asking for two years within which to pay this default. On September 16, 1927, complainant replied to this letter and advised Conner's attorney that this shortage must be promptly paid or liquidated. On the same date complainant wrote Conner to the same effect. On September 16, 1927, Conner's attorney wrote complainant that it was imperative that he have a reply to his letter of September 12 at the earliest date possible. This had reference to a reply to his letter of September 12 requesting the two years extension for Conner.

It would thus appear that Conner wrote the letter of September 16, requesting a reply to his letter of September 12, on the same date that complainant wrote its letter to the attorney, denying the request.

It also appears without conflict in the evidence that on September 21, 1927, the same attorney acting for Conner wrote complainant that Conner was not financially able to pay the debt and that the bankrupt court seemed to be his only alternative. In this letter he also advised complainant that Conner would discontinue collecting payments on outstanding machines on October 1, 1927. This letter was the last communication complainant received from Conner or his attorney.

On September 26, 1927, Conner executed the deed to the 223 acres of land here involved to his wife, Mrs. Eloise Conner, for a recited consideration of one dollar cash and other valuable considerations, and had this deed promptly recorded. Conner had owned this tract of land situated in Lauderdale County, Tennessee, since May 19, 1905, as shown by the deed to him to said tract. It also appears that on the date that Conner executed this deed of September 26, 1927, he was then in his place of business in St. Louis, trying to speedily wind up the business.

It also appears that after conveying this property to his wife, it left him insolvent. The record shows that he owned no other property at the time he conveyed this 223 acres to his wife.

Some significance may be attached to the fact that a few days before making this deed the St. Louis attorney for Mr. Conner, a Mr. Babbitt, conveyed the implied threat that unless the extension of time was granted to Conner as requested by his letter of September 12, that Conner would have to go into bankruptcy. This was before he conveyed the property to his wife, and after conveying the 223

acres of land to his wife, he did not go into bankruptcy. The deed which Conner executed to his wife to the 223 acre tract in Lauderdale County is only a quit claim deed and warrants the title against persons claiming by, through or under said deed. The deed recites that it was made for a consideration of one dollar in cash and other valuable considerations.

The respective answers of both Conner and his wife filed to the original and supplemental bills of complainant, while denying that the conveyance was made with any fraudulent intent or purpose to defeat or defraud complainant in the collection of its debt, and while both answers state that the conveyances were made for a valuable consideration, or rather deny the allegation in the bill that it was a voluntary conveyance, yet it is significant that neither of these defendants set out in their answer what the true consideration was, or that the consideration was the indebtedness of C. C. Conner to his wife. It is also significant that no credit was entered on the three notes claimed to have been executed by C. C. Conner to his wife, evidencing an indebtedness which he owed to her for money advanced by her to him and paid by her on other debts, aggregating $13,000. In the respective answers of these parties no mention or reference whatever was made to these notes as being the true consideration for which the conveyance to the 223 acre tract of land in Lauderdale County was made.

About September 1, 1928, Annie Verser, an aunt of the defendant, C. C. Conner, died testate in Ripley, Tennessee. By her last will and testament which was admitted to probate in Lauderdale County on September 5, 1928, she devised the 100 acre tract of land here involved to Conner. On September 1, 1928, the date his aunt died, and five days before her will was probated, Conner and his wife, and also his brother and his wife executed a trust deed on certain lands, including this 100 acres which had been devised to Conner to secure an indebtedness of $1,000. Five hundred dollars of this indebtedness appears to have been the indebtedness of Conner. On September 5, 1928, the date on which Mrs. Verser's will was probated, Conner executed the deed to this 100 acres of land, conveying the same to his wife, subject alone to the mortgage indebtedness above referred to.

Conner had not paid anything on his indebtedness to complainant after the audit of his books was made. He still owed the entire deficit of $7.215.30 at the time he executed the deed of September 26, 1927, to the 223 acres and also on September 5, 1928, the date he executed the deed to his wife, conveying to her the 100 acres devised to him by his deceased aunt.

The defendants, Conner and wife, sought to show by evidence that C. C. Conner was indebted to Mrs. Eloise Conner on certain notes which he had given to her covering certain advances claimed to have

been made by Mrs. Conner to her husband, C. C. Conner, in the payment of certain obligations. The note which Conner claimed to owe his wife at the time the deed was executed, was dated October 3, 1921, approximately six years before the conveyance of the 223 acres of land. This note and the two other notes later referred to were introduced as evidence over the objections of complainant. However the court did exclude all the evidence with respect to the transactions had between husband and wife, and about which they respectively sought to testify.

It is significant that neither of these notes carried any credits. The defendant, C. C. Conner, did not enter any credit on the note at the time or after he executed the deed to his wife to the 223 acres of land which they now claim was the consideration for the conveyance.

It appears that Conner who had for many years been a resident of the city of St. Louis and engaged in business there, had owned this 223 acres of land for more than twenty years. He also claimed that he owed his wife for the advances made to him and represented by the note of October 3, 1921, for more than six years. At no prior time is it claimed by him that he had made any payments on said note to his wife, and had in no way sought to secure her for said alleged indebtedness until it was found that he was insolvent, and until complainant was making urgent demands upon him to pay its debt. It is significant that when he discovered this shortage, and when it was discovered by him that the audit showed that this amount of money had been collected and not remitted to complainant or otherwise accounted for, and after he had sought to procure an expansion of time to settle this indebtedness, and this effort had failed, he hurriedly made this deed conveying the 223 acres of land to his wife.

The first question for determination is, was there any evidence to warrant the jury in finding that the conveyance of the 223 acres of land was the result of fraudulent collusion between Conner and his wife, and made for the fraudulent purpose and intent of hindering, delaying and defeating complainant in the collection of its debt against Conner? Under the settled rule, if there is any material evidence to support the jury finding and the jury verdict is concurred in by the Chancellor, the judgment or decree based upon that jury verdict or answer to a given issue of fact will not be disturbed on appeal, provided it is a material issue in the cause. There is no direct or positive evidence of fraud shown by the evidence and the facts above detailed. It is seldom that fraud of this character can be shown by positive or direct evidence. However, the courts have held with great unanimity that fraud may be traced through circumstances and facts surrounding the transaction. Harnett v. Doyle, 16 Tenn. App., 302, 315, 64 S. W. (2d), 227, and numerous authorities cited therein.

Here we have present certain recognized badges of fraud; the relationship of the parties to the transaction, husband and wife; the husband being indebted to the point of insolvency at the time the conveyance is made to the wife; the husband being urgently pressed to pay a considerable debt that he is financially unable to meet out of any known assets in the state of his residence; the husband seeking to obtain an extension of time, and this request definitely refused by the creditor; the husband, through his attorney, writing that it is imperatively important that his client, Connor, having an immediate reply as to whether his request for a two years extension of time would be granted; and then just five days before this conveyance was made by the husband to the wife of the 223 acres of land, but the ownership of which by Conner was unknown to complainant because Conner had stated in his application that he did not own any real estate. His ownership of this property was in this way concealed from complainant. Complainant had a right to rely upon the truthfulness of the answers made by Conner in the application.

It also appears that Mrs. Conner, the wife of C. C. Conner, signed this application with her husband, and she is presumed to have at least known of the answer made to this question in the application. In fact, she does not claim that she did not know of this representation made by her husband in this application when her husband was seeking to procure the contract from complainant. We think that these are sufficient badges of fraud as would cast upon the defendants the burden of proof of showing the bona fides of the transaction between husband and wife by which the husband conveyed all of his then owned property to his wife, under the circumstances as hereinabove detailed. We think that where the complainant has introduced evidence which casts suspicion upon the transaction between husband and wife and prove facts which warrant a suspicion of fraud or fraudulent intent, the burden of proof shifts from the complainant to the defendant, and then it devolves upon the defendants to show by a preponderance of the evidence that the conveyance was bona fide, and for a sufficient valuable consideration and without fraudulent intent between the parties.

We are therefore of the opinion that there was material evidence that would warrant the jury in answering the first twenty-one questions as they were answered, and that the assignments of error to the effect that there was no material evidence to support the findings of the jury on those issues presented and answered by the jury must be overruled and disallowed.

What we have had to say with reference to the facts as disclosed by the record in connection with the execution of the deed of September 26, 1927, conveying the 223 acres of land, is equally applicable to the conveyances of the 100 acres made September 1, 1928.

We can not escape the conclusion that under all the facts and circumstances as above set forth and referred to, the defendant, C. C. Conner, executed the two deeds in question to his wife for the purpose of hindering, delaying and defeating complainant in the collection of its debt. We are further of the opinion that the facts and circumstances as hereinbefore set out would well warrant the inference that the defendant, Mrs. Eloise Conner, in accepting the two respective deeds, did so with full knowledge that the purpose which her husband then had in executing the deeds in question was to hinder, delay and defeat complainant in the collection of its debt.

This transaction was surrounded with unusual circumstances. If it be admitted or conceded that Conner was actually indebted to his wife, and that this fact was established by competent evidence, the fact remains that she had never demanded or received any security for her debt for approximately six years since the $7,200 note was executed by her husband to her. As hereinabove pointed out, neither her answer nor that of her husband to the original and supplemental bills alleged or claimed that Conner was indebted to her in the way and manner that they sought to prove. There is no explanation whatever either by Connor or by his wife as to the haste in executing the deed to the 100 acres of land. This deed was executed almost simultaneously with the probate of the will of Conner's aunt, Mrs. Verser, and promptly placed to record. In other words, it is all too apparent, from the uncontradicted evidence in the record, that from the time Conner discovered his indebtedness to complainant and that complainant would not grant him any extension of time, then he conceived the idea of deeding all his property that he then owned to his wife. He had concealed from complainant that he owned any real estate, and certainly complainant had no means of knowing that Conner owned this 223 acres of land situated in Lauderdale County, Tennessee.

Conner had been a resident of St. Louis, Missouri, for many years. We think that under all the facts and circumstances as disclosed by the record the jury was well warranted in reaching the conclusion that the execution of the deed to the 223 acres, and also the execution of the deed to the 100 acres by Conner to his wife was a fraudulent effort to put this property out of the reach of complainant, should complainant ever discover that Conner owned any property. We are further of the opinion that jury was well warranted, under the facts as hereinabove set out, in finding that Mrs. Eloise Conner could not have been ignorant of this plan and purpose of her husband. These were such facts and circumstances as would well warrant an inference of fraud both in law and in fact.

Complaint is made by one of the assignments of error of the action of the Chancellor in granting the special request tendered by

complainant to be given in charge to the jury, which special request is as follows:

"Gentlemen of the Jury, I charge you as I am requested to charge you by the complainant that where a conveyance is attended with suspicious circumstances and the transfer includes all of the grantor's property rendering him insolvent, then the burden of proof shifts to the defendant to show by competent proof that she paid a fair consideration for the property. And if you find from the preponderance of the proof in this case that the transfers made by C. C. Conner to his wife were attended by suspicious circumstances and included all of his property and rendered him insolvent, then I charge you the burden of proof would shift to defendant, Eloise Conner, to show by competent proof she paid a fair consideration for said property."

It is the contention of appellant under this assignment that the above charge was erroneous, in that the burden of proof remained on complainant throughout to sustain complainant's allegations that the conveyances were fraudulent; and further that the charge as given did not go far enough and that the court should have in that connection instructed the jury that the fair consideration referred to could be in recognition of an antecedent debt, or that the property was conveyed in good faith to secure an antecedent debt in an amount not disproportionately small as compared with the value of the property conveyed.

In support of this contention appellant cites and relies upon the case of Whipple v. McKew, 166 Tenn., 31, 60 S. W. (2d), 1006, 1007, wherein the court stated:

"This court has pointed out in a number of cases that, where the burden is on a plaintiff to establish a fact, the burden never shifts; and, where a presumption arises, it does not convert the defendant's general issue into an affirmative defense, but makes it incumbent on him to present his proofs; and, where all the evidence is in, the question for decision is whether the preponderance is with the plaintiff."

See, also, Provident Life & Accident Insurance Co. v. Prieto, 169 Tenn., 124, 83 S. W. (2d), 251.

However, it is conceded by appellant that where the question of fraud is involved and proof has been introduced by complainant which casts suspicion on the transaction, that the rule is settled that the burden of proceeding with evidence by the defendant is on the defendant. This, in effect, is but a recognition of the general rule that where plaintiff has introduced some proof of fraud, or proof to support an allegation of fraud, that the defendant charged with fraud is required to go forward with his proof to overcome the suspicion and inference of fraud as shown by complainant's proof. Shockley v. Morristown Produce & Ice Co., 158 Tenn., 148, 11 S. W. (2d), 900; Roths Central Garage v. Holmes, 10 Tenn. App., 500.

After all, this means that the burden of proof, at least for the time being, shifts from the complainant to the defendant and the presumption or inference of fraud continues until the defendant has by competent proof overcome the presumption, and when this is done the burden of proof continues on the complainant. So that, in this sense, the burden of proof remains on the complainant. We think that the comparatively recent case of James v. Joseph, 156 Tenn., 417, 1 S. W. (2d), 1017, 1019, is in point and wherein the court uses the following language:

"In a number of reported cases in which creditors have endeavored to set aside conveyances of property as voluntary and in fraud of their rights, this court has held that, upon the presentation of sufficient evidence to justify and create a suspicion that the conveyance was without consideration, the burden shifted to the claimants under the conveyance to show that some consideration had passed, and the nature and amount thereof. Smartt [& Wife] v. Watterhouse, 6 Humph. [25 Tenn.], 158, 159; Alley v. Connell, 3 Head [40 Tenn.], 578; Dunlap v. Haynes, 4 Heisk. [51 Tenn.], 476, 479; Yost v. Hudiburg, 2 Lea [70 Tenn.], 627; Farnsworth v. Bell, 5 Sneed [37 Tenn.], 531, 534."

There are numerous other Tennessee cases holding to the same effect, including Jones v. Read, 1 Humph., 335, 20 Tenn., 335; Rindskoff, Bro. & Co. v. Guggenheim, 3 Cold., 284, 43 Tenn., 284; Jacobi v. Schloss, 7 Cold., 385, 47 Tenn., 385; Bank of Blount County v. Dunn, 10 Tenn. App., 95, 103; Taylor v. Taylor, 6 Tenn. Civ. App., 268; Hartnett v. Doyle, 16 Tenn. App., 302, 319, 64 S. W. (2d), 227.

Appellant also cites and relies upon the case of City National Bank v. Barnes, 164 Tenn., 450, 51 S. W. (2d), 503. An examination of that case discloses that the complainant was seeking a decree on the bill and answer. The court in that case held that without any proof sustaining the allegations of fraud contained in the bill, and where the allegations of fraud were denied by the answer, that no suspicion of fraud would arise on the mere allegations contained in the bill and therefore there was never at any time cast upon the defendant the burden of proof, or any requirement to go forward with proof on the mere allegations contained in the bill, and nothing else appearing. We do not think that that case is at all applicable to the facts of the present case.

Appellant also relies on the case of Calloway v. Witt, 21 Tenn. App., 74, 105 S. W. (2d), 123, 127, decided by the Court of Appeals, Eastern Section, on March 10, 1937, and certiorari denied by the Supreme Court on May 22, 1937. In that case the conveyance attacked by creditors was a conveyance from a daughter to her father. Fraud in law and fraud in fact were alleged in the bill. We quote the following from the opinion of the court in that case:

"The answer does not evasively deny the fraud charged in the bill, but positively denies the fraud charged in the bill, however the complainant did go further and establish the relationship of the parties. This was not sufficient to make out a prima facie case, raising a presumption of fraud against the defendant, which would require the defendant to overthrow the presumption by proof. Farnsworth v. Bell, 5 Sneed, 531; Harnett v. Doyle, 16 Tenn. App., 302, [319], 64 S. W. (2d), 227; Farmers Bank of Lynchburg v. Farrar, 4 Tenn. App., 186."

It will thus be seen that in Calloway v. Witt, supra, the only proof or suspicion of fraud offered by complainant to sustain the charges of fraud was proof of the relationship of the parties, and no facts or circumstances other than the mere relationship of the parties are present in that case that could operate to create a suspicion or inference of fraud, so as to make the rule requiring the defendant to overcome the prima facie case by proof.

We are therefore of the opinion that the assignment of error presenting this question must be overruled.

By another assignment of error the contention is made by appellant that the failure of the jury to answer the last four issues or questions submitted, and their failure to agree on said issues, to-wit, Nos. 22, 23, 24, and 25, renders the verdict void and repugnant to issues 2, 6, 7, 8, 10, 11, 12, and 13, and also repugnant to the decree of the court. It being further contended under this assignment that the Chancellor was in error in not sustaining the motion made by the defendants to enter a mistrial because of the failure of the jury to agree on the four above mentioned issues or questions.

In the case of Minton v. Wilkerson, 133 Tenn., 484, 182 S. W., 238, it was said:

"Generally, when in an equity case there are several issues of fact submitted to a jury, they must find on all or none, and a verdict on one or more is not valid."

However, in that case the court recognized certain well settled exceptions to the general rule and further said:

"However, the failure of the jury in an equity case to agree upon or respond to an issue which is ab initio immaterial . . . or which becomes immaterial in view of the finding on other issues . . . does not vitiate the verdict, when, taken as a whole, the findings are sufficiently comprehensive to support a decree which properly disposes of the whole case."

We have heretofore set out these four issues or questions to which the jury reported that they could not agree, but we repeat them here:

"Q. 22. At the time C. C. Conner conveyed the 223 acre tract of land to Mrs. Eloise M. Conner, was he indebted to his wife, Mrs. Eloise M. Conner?

"Q. 23. At the time C. C. Conner conveyed the 100 acre tract of land to Mrs. Eloise M. Conner, was he indebted to his wife, Mrs. Eloise M. Conner?

"Q. 24. Did C. C. Conner convey the 223 acre tract of land to his wife, Eloise M. Conner, as payment on a debt which he owed her?

"Q. 25. Did C. C. Conner convey the 100 acre tract of land to his wife, Eloise M. Conner, as payment on a debt which he owed her?"

■ Adopting the rule in Minton v. Wilkerson, supra, we are of the opinion that these four issues became immaterial in view of the answers rendered by the jury to the other issues presented. We think that the jury answered the determinative issues involved and agreed on the determinative issues.

■ If the defendant, Mrs. Eloise Conner, took the two deeds in question from her husband for the purpose of aiding him in placing this property beyond the reach of complainant so that it could not be subjected to the payment of the debt which her husband owed to complainant and thereby participated in the fraud, and these conveyances were made out of collusion with the fraudulent intent to hinder, delay and defeat complainant in the collection of its debt, then this constituted a fraud in fact which would render the two deeds void at the instance of complainant, regardless of whether Conner was indebted to his wife at the time the conveyances were made. Much of the evidence offered by the defendants on this subject was overruled by the court as being incompetent under the rule that proof of a transaction entered into between husband and wife is inadmissible. There was some immaterial evidence offered by the defendants as being corroborative. This evidence which was admitted by the court was in the nature of hearsay and did not purport to be evidence of any material fact. This evidence was admitted for what it was worth, but we do not think that the so called corroborative or independent evidence offered by the defendants, Conner and wife, on the subject of any indebtedness which was claimed to be owing by Conner to his wife was, of itself, sufficient to prove the alleged or claimed indebtedness.

However this may be, we think that when the jury has found that there was fraud both in law and in fact, under proper instructions from the court on these subjects, and there was material evidence to support such findings by the jury, that it would become immaterial whether Conner was actually indebted to his wife at the time the conveyances were made.

In the case of Wright v. Jackson Const. Co., 138 Tenn., 145, 149, 196 S. W., 488, 489, the court stated:

"Further on this point: The law is that only determinative issues can be presented; that is, determinative of the whole case or of some distinct or separable part or branch of the case. Crisman v. Mc-

Murray, 107 Tenn., 469, 64 S. W., 711; Connor v. Frierson, 98 Tenn., 183, 38 S. W., 1031; McElya v. Hill, 105 Tenn., 319, 59 S. W., 1025.''

By all these cases and others the general rule is declared to be that only determinative issues and issues material to the inquiry are necessary to be determined by the jury. There is an interesting discussion of this question in Madison Trust Co. v. Stahlman, 134 Tenn., 402, 183 S. W., 1012. The general thought is expressed that if there be but one determinative issue in the case, the submission of others is immaterial. All that can be looked to is the verdict of the jury on the material issue. Continental Nat. Bank v. First Nat. Bank, 108 Tenn., 374, 68 S. W., 497.

Again referring to the case of Minton v. Wilkerson, supra, wherein the court further stated in the course of the opinion:

''The failure of the jury in an equity case to agree upon or respond to an issue which is ab initio immaterial . . . or which becomes immaterial in view of the finding on other issues . . . does not vitiate the verdict, when, taken as a whole, the findings are sufficiently comprehensive to support a decree which properly disposes of the whole case.''

We are therefore of the opinion, that in view of the material issues submitted to the jury, and the answers of the jury to these material issues, they were the determinative issues and entirely sufficient upon which the chancellor could rest his decree; and, that the failure of the jury to agree on the four issues above referred to was immaterial and could not operate to vitiate the jury verdict on the material and determinative issues presented. It results that the assignment of error presenting this question is also overruled.

The next question presented on this appeal is the alleged error of the chancellor in refusing to instruct the jury as to whether or not certain notes claimed to have been executed by Conner to his wife had been admitted as evidence by the court. When this request was made by the jury, the chancellor announced to the jury that certain evidence offered pertaining to the notes had been excluded, while other evidence had been admitted as competent. He stated to the jury that he was not privileged to discuss with the jury the facts of the case but that the jury would have to rely upon their own recollection of the evidence.

We think that when all the facts and circumstances of the case are reviewed and considered, that this did not constitute error on the part of the court. The court had admitted certain evidence pertaining to these notes and had excluded certain evidence pertaining to the notes. However the court did permit the filing of these notes as evidence and they were in the record.

We are further of the opinion that if this was error at all, that it was not material and did not constitute reversible error. It

was, in fact, immaterial whether these notes had been admitted in evidence or not. In fact, as hereinbefore pointed out, we think it is immaterial whether Conner was actually indebted to his wife as claimed by him at the time the two deeds in question were executed. As above pointed out, if the two conveyances were executed by Conner for the fraudulent purpose of hindering and delaying the complainant in the collection of its debt, and Mrs. Conner knew the facts with reference thereto and acquiesced in and aided her husband in putting this property beyond the reach of his creditors and thereby participated in the fraud practiced by her husband on complainant, with the fraudulent intention, scheme, design, and purpose of hindering, delaying, and defeating complainant in the collection of its debt, that it would be immaterial whether or not the husband was actually indebted to his wife at the time the conveyances were made.

We think that the jury was well warranted in the conclusion reached that regardless of whether Conner was indebted to his wife, that these deeds were not intended in a bona fide way to be executed to the wife in consideration of said claimed indebtedness, and would not have been so executed had it not been for his then financial condition, and the facts and circumstances as shown by the record with respect to his indebtedness to complainant.

We think the conclusion is inescapable that the real purpose of the execution of the deeds by Conner to his wife, executed as they were and under the circumstances as shown by the record, that it was but an attempt upon the part of husband and wife to put this property beyond the reach of complainant or any other creditors. In this view of the case, we think that these conveyances, being a fraud in fact, was also a fraud in law and were not executed for the purpose of discharging any debt which Conner may have owed to his wife. It results that this assignment of error is accordingly overruled.

By another assignment of error it is contended by appellant that the chancellor did not express a concurrence in the verdict of the jury on the various issues submitted and the answers by the jury. We find nothing in the record to warrant this contention. The chancellor, we think, very clearly expressed his full approval of the verdict in the course of disposing of the motion for a new trial.

Of course, it is the judicial function of the chancellor to weigh the evidence and if he finds that the evidence preponderates against the verdict of the jury, he should set the verdict aside. However, we find no expression or suggestion in the statement made by the chancellor in disposing of the motion for a new trial that he did not fully concur in the verdict of the jury on the several issues submitted.

The final question on this appeal is the assignment of error directed to the action of the Chancellor in refusing to give in charge to the jury the special requests tendered by the defendant.

█ The defendant tendered two special requests which were practically the same. The chancellor gave in charge one of these special requests on the same subject, and in the same language requested by the defendant. We further find that the general charge on the same subject was entirely sufficient, and fully covered the matter presented by both of these special requests. It would have been but a repetition for the chancellor to have granted the special request which he refused and which is made the basis of this assignment of error.

It results that all assignments of error are overruled and the decree of the chancellor is accordingly affirmed.

Appellant and sureties on her appeal bond will pay the costs of the cause, including the cost of this appeal. The cause will be remanded to the Chancery Court of Lauderdale County to be further proceeded with under the order of reference made by the chancellor in the cause.

Anderson and Ketchum, JJ., concur.