AYLOR v. RICHMOND *et al.*

(*Nashville,* December Term, 1945.)

Opinion filed January 5, 1946.

JEFF D. FULTS, of Tracy City, for complainant, appellee.

RAULSTON & RAULSTON, of South Pittsburg, for defendants, appellants.

Mr. Justice Gailor delivered the opinion of the Court.

The original bill in this cause was filed to set aside a conveyance of a tract of land in Marion County, alleged to have been fraudulently made by W. H. Richmond, Sr., the defendant father, to his son, the defendant W. H. Richmond, Jr., "to defeat, hinder and delay" the collection of a judgment at law by the complainant, who is the judgment creditor. The judgment at law was taken against the defendants as joint makers of a promissory note and the deed of conveyance was not made until after the rendition of the judgment, and was not recorded until the judgment had become final.

The defendant father is a man more than 80 years of age and his son is of middle age. The land upon which both defendants apparently reside is worth "from $1,-500 to $2,000." and the judgment at law, rendered Februrary 10, 1944, amounts without interest, to $681.46.

It is alleged in the bill that the purpose of the conveyance from father to son, was to increase the value of the homestead exemption, since the life expectancy of the son is far greater than that of the aged father, and so to decrease the possibility of an execution sale at a price greater than the homestead exemption of $1,000. It is further alleged that if the title to the land had been left in the father, an execution sale could have been made in an amount in excess of $1,000, and in an amount sufficient to have provided the exemption and also paid the judgment. The bill was met by demurrer, which the chancellor overruled. The defendants have appealed and assigned errors which renew the grounds of demurrer and which we consider hereinafter.

██ ██ Although the creditor has a judgment at law, it is not alleged in the original bill that there has been

an execution on this judgment and a return *"nulla bona."* Indeed, it is apparent from the allegations of the bill that if an execution was levied that the junior debtor would plead his homestead exemption, and so prejudice the collection of the judgment. The result is that the issue and levy of execution at law, with the title in the junior debtor, is the situation in the law suit which the bill is filed to avoid. By assignments of error two, three and six, it is insisted that the omission of an allegation that legal remedies have been exhausted, is fatal to the bill and that the relief sought cannot be granted until the complainant has exhausted remedies available to him at law. We find no merit in this insistence.

". . . the general rule [that legal remedies must be exhausted] does not require the creditor to do a fruitless thing, nor is it so strict as to deny to a party the interposition of the equity powers of the court when the situation is such as to render impossible the aid of a court of law in order to take the preliminary steps and produce what ordinarily may be treated as a condition precedent to the application for equitable relief." 37 C. J. S., Fraudulent Conveyances, Sec. 330, p. 1155.

"Under the statutes in some jurisdictions, as, for example, a jurisdiction in which the Uniform Fraudulent Conveyance Act controls, a lien is held unnecessary; and under such provisions a judgment creditor may sue to set aside a fraudulent conveyance, notwithstanding his judgment has not been impressed as a lien on the property." [The Uniform Fraudulent Conveyance Act is carried into our Code at section 7271 *et seq.*] 37 C. J. S., Fraudulent Conveyances, Sec. 327, p. 1153.

■ Since, if a levy at law had been actually made it would then be too late for the chancellor to grant the

relief sought by the bill, we think the chancellor correctly held that no such exhaustion of legal remedy was necessary. In denying the validity of such requirement, he cited the rule stated in 37 C. J. S., Fraudulent Conveyances, Sec. 336, p. 1171, note 53:

" 'Such requirement would place a premium on fraud in that the debtor by fraudulently conveying his property could cast upon his co-obligors the burden of discharging the debt.' *Rine* v. *Compton*, 115 W. Va. 379, 176 S. E. 429, 432."

Of course, the creditors in the *Rine case* were not jointly and severally liable on a judgment, but in reason, the rule is the more applicable under the peculiar facts of the instant case. The allegation that legal remedies have been exhausted and that there has been a return *"nulla bona"* is not one of the requisite allegations for a bill to set aside a fraudulent conveyance as the same is drafted and discussed in Gibson's Suits in Chy., (1937) sections 1013, 1014, nor is any such requirement suggested as indispensable in Code, section 7271 et seq. (the Uniform Fraudulent Conveyance Act). In *Scott County Nat. Bank* v. *Robinson*, 143 Tenn. 356, 226 S. W. 218, this Court expressly held that a *"nulla bona"* return was not prerequisite to the fixation of a lien, so long as the insolvency of the judgment debtor was otherwise proved.

Assignments one, four and five may be conveniently considered together. They present three propositions. That the chancellor erred in holding the conveyance fraudulent, because

1. It was made by one judgment debtor to another, who was jointly and equally liable.

2. Any prejudice to the complainant by the conveyance is a matter of surmise and speculation.

3. Such prejudice was dependent upon a valid claim of homestead exemption, and there is no averment in the bill that either the senior or junior debtor was the head of a family.

(1) The fact that the relation of joint judgment debtor existed between defendants, was not determinative, nor did the chancellor hold that it was, but the fact that these joint debtors were related as father and son, was sufficient to justify a careful scrutiny of the conveyance if the father, the grantor, owed the debt whether the son was or was not jointly liable therefor. *Robinson et al.* v. *M. & H. Frankel*, 85 Tenn. 475, 3 S. W. 652; *Bumpas* v. *Dotson*, 26 Tenn. 310, 317, 46 Am. Dec. 81; 37 C. J. S., Fraudulent Conveyances, sec. 180 et seq.

It is insisted that since the property of both defendants was equally liable to sale under execution, that the ownership of the legal title was immaterial. Obviously this is a misstatement of fact, since, if the title was in the father, the title was marketable, but if in the son, because of his longer expectancy, it was not. The materiality of the ownership of the legal title to the complainant's rights, needs no further elaboration.

(2) It is insisted that because the hour of death is uncertain and because fathers of 80 years of age have survived their sons of middle age, that the finding of prejudice to complainant is a matter of surmise and speculation. We think this insistence confuses the rights of complainant with the rights of the purchaser at the execution sale. It is quite certain that if at an execution sale, an exempt life estate is claimed by a debtor of 40 years of age, that the prospective purchaser will bid much less than he would if the exemption was claimed for a man

85 years of age. But it is a matter of surmise and speculation whether the lesser bid would be justified by future events, since the man of 85 might survive the man of 40. Here, however, it is the present right of the complainant to collect his debt, with which we are concerned, and it is evident that that right is materially prejudiced by the conveyance by the senior to the junior debtor.

(3) Finally, it is insisted that the bill is fatally defective in failing to allege that either the grantor or the grantee was the head of a family, and so entitled to the homestead exemption.

The bill, after alleging that the grantor, and father, was a man past 80 years of age, states:

"W. H. Richmond, Jr., is a middle aged man, and while the judgment is against him, the judgment in the Circuit Court, yet it was evidently figured that if the value of the place could be kept below one thousand dollars that it would not be sold, and in this way complainant would not be able to collect his judgment."

We think it a fair inference from this statement in the bill that being the head of a family, the junior debtor would claim the homestead. The mention of the sum of $1,000 has no other significance than as a reference to the amount of the homestead exemption. The fraudulent conveyance does not defeat the right to homestead (*Hamby* v. *Lane*, 107 Tenn. 698, 64 S. W. 1067, 89 Am. St. Rep. 967), and it is a right guaranteed by the Constitution under Article XI, section 11. We think that the many decisions indicating that the right to homestead is a "favorite in this State," *Dickinson* v. *Mayer*, 58 Tenn. 515; *Hinds* v. *Buck*, 177 Tenn. 444, 150 S. W. (2d) 1071, compel a liberal construction of the bill in this regard,

and if the inference we have indicated is unwarranted, it was a matter of proof which could not be reached by demurrer.

All assignments of error are overruled and the decree is affirmed.