## NASHVILLE MILK PRODUCERS, INC. v. IVO ALSTON, LOUISE ALLEN ALSTON, and RICHARD DOUGLAS ALSTON.—307 S. W. (2d) 66.

Middle Section. May 3, 1957.

Petition for Certiorari Denied by Supreme Court July 29, 1957.

258

Ernest C. Matthews, III, Nashville, for complainant.

Hooker, Keeble, Dodson & Harris, Nashville, for defendants.

## I

### History of the Case and Pleadings

SHRIVER, J. The original bill in this cause alleges that Ivo Alston is indebted to the complainant in the

amount of $1,228.63 for dairy feed used in the operation of a dairy during the months of July, August, September, October and November 1954. Complainant is a cooperative marketing association of which Ivo Alston was a member, and, by virtue of that membership and Federal Milk Marketing Order No. 78, promulgated under the Agricultural Marketing Agreement Act of 1937, as amended, 7 U. S. C. A. sec. 671 et seq., complainant was entitled to collect from the Market Administrator the proceeds from the sale of milk by said defendant. The bill further alleges that the parties are operating under an agreement, pending this litigation, which allows complainant to hold $100 per month out of the Alston milk check, with the understanding that this is without prejudice to their rights.

It is alleged that on or about December 1, 1953, Ivo Alston, purported to transfer the herd of dairy cattle described in the bill to his wife, Louise Allen Alston. Again, on or about February 26, 1955, Louise Allen Alston purported to transfer said dairy herd to their son, Richard Douglas Alston, and both of the alleged transfers of title were made in return for no consideration or for a consideration that was not fair, equitable and adequate in law; that these alleged transfers rendered the grantors insolvent and execution proof, and that both of said conveyances were a part of a general scheme contrived by all three defendants in fraud, covin, collusion and guile, for the purpose and intent to delay, hinder and defraud both the existing and subsequent creditors of the said Ivo Alston, and more especially to hinder, delay and defraud complainant in the collection of its debt of $1,228.63.

The bill further alleges that, at the time of these purported transfers, Ivo and Louise Allen Alston were indebted to numerous and sundry creditors and were threatened with a number of lawsuits, and the dairy herd in question was subject to a chattel mortgage in the original amount of $3,600, in favor of the Broadway National Bank of Nashville, Tennessee, which said chattel mortgage was recorded in the Register's Office of this county.

The three defendants filed answers in which they generally denied any fraud, and asserted that the transfer of the dairy herd from Alston to his wife was made in March 1953 and was not for the purpose of hindering, delaying or defrauding creditors.

The answers further allege that the transfer from Louise Allen Alston to her son, Richard Douglas Alston, took place on February 21, 1955 and it was denied that this transfer was fraudulent or for the purpose of hindering and delaying creditors.

The answers aver that these two transfers were for a sufficient and valuable consideration in each instance, but they do not explain the reason for the transfers nor is any information given as to what the consideration was.

It is to be noted that none of the three answers are sworn to.

It was stipulated that the cause be tried on oral testimony and it was, accordingly, heard before the Chancellor on the testimony of witnesses in open Court.

It is to be noted, further, that none of the defendants below testified, nor was any evidence adduced in their behalf.

It was admitted by Ivo Alston that he was indebted to the appellant in some amount but he did not state how much the indebtedness was.

The Chancellor heard the case on the 11th and 12th of June 1956 and, thereafter, on June 26, 1956, entered a decree, the essential provisions of which are as follows:

"That the defendant Ivo Alston, purchased feed from the complainant, Nashville Milk Producers, Inc., during the months of July to November, 1954, for which he is presently indebted to the complainant in the amount of Twelve Hundred Twenty-Eight and 63/100 ($1,228.63) Dollars.

"That the transfer of the dairy herd by the defendant Ivo Alston to his wife, in either March or December 1953, was not fraudulent in law as to complainant, because complainant's debt did not exist at the time of the transfer and did not come into being until at last seven months thereafter; and that the transfer of said dairy herd from Mrs. Alston to her son Richard Douglas Alston on, or around, February 26, 1955, likewise did not constitute fraud in law as to complainant, because complainant did not have an indebtedness against the defendant Mrs. Alston, and was not a creditor of Mrs. Alston at the time of said transfer; and because the proof does not establish that at the time of said conveyances the defendants making the conveyances were or were not, thereby rendered insolvent.

\* \* \* \* \* \*

"It is, therefore, ordered, adjudged and decreed that the complainant be and is hereby awarded a

judgment against the defendant Ivo Alston in the amount of Twelve Hundred Twenty-Eight and 63/100 ($1228.63) Dollars.

"It is further ordered that the attachment heretofore issued in this cause be and the same is hereby dissolved.

"It is further ordered that the injunction heretofore issued be and the same is hereby dissolved, except the injunction restraining Richard D. Alston from proceeding further with his suit in General Sessions Court shall remain in effect pending and during appeal.

"It is further ordered that complainant's bill insofar as it seeks to set aside the transfers of the said dairy herd from defendant Ivo Alston to the defendant Louise Allen Alston, and from the defendant Louise Allen Alston to the defendant Richard Douglas Alston, upon the ground that the said transfers were fraudulent as to complainant's rights, be and the same is hereby dismissed.

"The costs of this cause to date are taxed against the defendant Ivo Alston, and an execution may issue if necessary for the collection of such costs and the judgment rendered against him."

## II

Nashville Milk Producers, Inc., is a cooperative marketing association organized under state and federal laws. It acts as marketing agent for dairy farmers throughout middle Tennessee and provides milk testing and other service and sells live stock feed to its members.

In March 1946 Ivo Alston became a member of complainant association and availed himself of its services. During the months of July through November 1954 he bought cow and dairy feed on credit of thirty (30) days from complainant.

The account became delinquent and, on March 7, 1955, Mr. Alston executed a note to the complainant as evidence of his indebtedness.

There was no appeal from the judgment of the Chancellor against Ivo Alston for $1,228.63 representing the balance of this indebtedness.

It was not until after the first of September 1955 that the complainant, through its secretary-treasurer, Mr. Glenn G. Summers, learned that the dairy herd had been transferred by Ivo Alston to his wife Louise Allen Alston and, subsequently, in February 1955, by Mrs. Alston to their son, Richard Douglas Alston.

The debt for which suit was brought and judgment obtained herein, was incurred, as aforesaid, in the Summer and Fall of 1954. At this time Mr. Summers, Secretary-Treasurer of the complainant, was aware that the milk account, as carried on the books of the Federal Milk Market Administrator, had been charged to the wife and later to the son. Mr. Summers testified that, when he questioned Mr. Ivo Alston about the transfer of the dairy account to the name of his son, Mr. Alston told him that it was all right as it was still in the family and that it was done merely to keep his son out of military service.

When a dispute arose over the payment for the feed purchased by Mr. Alston, he and Mrs. Alston agreed

with Mr. Summers that complainant might pick up the milk check and make a deduction therefrom to be credited on the account, and a letter was prepared in the office of Mr. Summers, copy of which is exhibit No. 4 to his testimony, for the signature of Mr. and Mrs. Alston, and while they took the letter with the agreement that they would sign it and mail it to the Market Administrator, this was never done.

Thereafter the bill in this cause was filed.

The record herein indicates that the value of the herd of cows was approximately $8,000.

It was stipulated that certified copies of warrants showing proceedings in several cases in the General Sessions Court of this County could be filed as evidence. These warrants disclosed that there was a judgment in favor of Paragon Mills against Ivo Alston on February 15, 1954, for $138.07; a judgment in favor of Dr. W. O. Green against Ivo Alston rendered September 29, 1954, for $80; a judgment in favor of Polly's Department Store against Ivo Alston on December 30, 1954, for $29.66; a judgment in favor of Crabtree Grocery against Ivo and Louise Alston on February 14, 1955, for $61.30; and a judgment in favor of Paragon Mills against Mr. and Mrs. Ivo Alston on March 4, 1955, but the amount is not shown.

There were a number of other judgments obtained against Ivo Alston during 1954 and 1955 for feed bills, hauling charges, veterinary fees, insurance premiums and other debts incurred in connection with the dairy.

Mr. Herbert F. Wallace, Sr., owns the farm on which the Alston dairy is located. He testified that the land

was originally leased to Ivo Alston for a dairy operation and had been under yearly written leases to him for several years. The contract each year was with Ivo Alston. The last contract entered into was dated October 1, 1955 and was a contract between Herbert Wallace, Sr., as lessor, and Ivo Alston, lessee.

It was stipulated that bills of sale to the dairy herd from Ivo Alston to Louise Allen Alston and from Louise Allen Alston to Richard Douglas Alston were never recorded, and counsel for defendants admitted that he did not know whether these sales were evidenced by written instruments or not.

### III

### Assignments of Error

There are four assignments, which assert that the evidence preponderated against the judgment; that it was error to fail to find all three defendants guilty of participating in a scheme to defraud complainant and other creditors; and that it was error to exclude the testimony of J. B. McCroskey relative to garnishments sought to be run on the milk account of Ivo Alston, since this evidence was material on the question of his solvency.

### IV

As has been stated hereinabove, the transfers attacked by the bill in this cause involve a herd of dairy cattle on a dairy farm under lease to the defendant Ivo Alston. This dairy herd was transferred, according to the allegations of the answers, to Mr. Alston's wife and, subsequently, by her to their son. It appears that the herd remained throughout the period in question on the same

farm, and, as far as we can tell from the record, under the same control and management after the transfers in question, as was the case before the transfers.

Furthermore, it is admitted that the feed which was bought from the complainant by Ivo Alston and for which judgment was rendered by the Chancellor, was used to feed this same herd of cattle, thus inuring to the benefit of Mrs. Alston, the purported owner of said cattle, as well as to Mr. Alston and to the son who is said to have subsequently acquired them.

In spite of very pointed and specific charges of an intent on the part of defendants to hinder, delay and defraud existing and future creditors, and the further charge of collusion and a well designed scheme to defraud, the answers are not sworn to, and only make general denials of fraud and intent to hinder or delay creditors. No reason for the transfers, nor any explanation of them is contained in any of the answers of these defendants.

The bill charges that the transfer of this herd, shown to be worth about $8,000, rendered the defendant Ivo Alston insolvent. Yet no statement or allegation is contained in his answer, or in any of the answers, as to what, if any, other property of value he owned at the time, or any disclosure of his actual financial worth.

In addition to all the above, which is not controverted except for the general denials in the answers, it is strongly indicated that Mr. Alston was experiencing considerable financial difficulty with a number of creditors and, if he was not insolvent, as charged, there were strong circumstances to indicate that he was.

In spite of all the charges made in the bill, and in spite of all the proof herein on behalf of complainant, none of these defendants saw fit to take the witness stand to answer any of the charges or to controvert any of the suspicious facts and circumstances surrounding these transactions.

It may be observed that, when persons accused of fraud are free of the charge, and are conscious of having dealt honestly and fairly with their creditors, such persons are usually anxious to make a full, fair and forthright disclosure of the true facts in order that suspicion will be removed and their good names protected.

## V

It is not necessary to quote herein the provisions in our statutes with respect to fraud and fraudulent conveyances. It is sufficient to call attention to sections 64-301 through 64-315, T. C. A., dealing with this subject.

It is to be noted that the statutes provide that every conveyance made without a fair consideration, when the person making it is engaged, or is about to be engaged in a business or transaction for which the property remaining in his hands, after the conveyance, is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business transaction, without regard to the actual intent to defraud.

The statute further provides that every conveyance made without a fair consideration when the person making the conveyance intends to or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

██ In Citizens Bank and Trust Co. v. White, 12 Tenn. App. 583 (pp. 590-591), it was said that, where a conveyance is made by a grantor to his wife, it is not to be presumed that she was, or would be, able to discharge the obligations assumed. And where it is not alleged that she had any property out of which these obligations could be paid, this in itself is sufficient to raise a strong suspicion of a want of consideration; and the burden is upon the defendants to prove not only that the consideration was real, but also that it was adequate. The rule is that where the circumstances under which a transfer of property by a debtor are suspicious, the failure of the parties to testify or to produce available explanatory or rebutting evidence is a badge of fraud. 27 C. J. 494; 37 C. J. S. Fraudulent Conveyances sec. 91; Shapira v. Paletz, Tenn. Ch. App., 59 S. W. 774.

██ It was further pointed out that Tennessee is one of the states in which the general rule prevails that the burden of proof does not rest upon the grantee who is the wife of the grantor to show freedom from fraud; but this rule does not apply where, prima facie, the conveyance was voluntary or attended with suspicious circumstances, and the transfer included substantially all of the grantor's property, rendering him insolvent. 27 C. J. 795; 37 C. J. S. Fraudulent Conveyances, sec. 383.

We quote from the opinion in said case as follows:

"The obligations definitely specified in the deed amounted to nearly $10,000.00. As aforesaid, the record is silent as to the grantee's ability to pay them. If she had any ability to pay them, or any substantial prospect of paying them, she could have

shown it, but no effort to this end was made. In the deed some purchase money notes on the business property were assumed; but although the amount of these notes must have been within the knowledge of the defendants they did not undertake to show it.

"As the defendants did not carry the burden, the charges in the bill must be sustained."

In General Contract Purchase Corporation v. Conner, 23 Tenn. App. 1, 126 S. W. (2d) 347, it was held:

"Fraud in conveyance may be traced through circumstances and facts surrounding the transaction, in lieu of positive or direct evidence."

"Where fraud is involved and complainant introduces proof casting suspicion on the transaction, defendant charged with fraud has the burden of proceeding with the evidence to overcome the suspicion, and when this is done the burden of proof continues on complainant."

Also see McDonald v. Baldwin, 24 Tenn. App. 670, 148 S. W. (2d) 385.

In Union Bank v. Chaffin, 24 Tenn. App. 528, 147 S. W. (2d) 414, it was said that where circumstances under which a debtor transfers property are suspicious, failure of the parties to testify or to produce an available explanation or rebutting evidence is a badge of fraud and that transactions between husband and wife whereby husband's property is placed beyond reach of his creditors generally excite suspicion and should be carefully scrutinized.

■ Where a complainant seeking to set aside conveyances by a husband to his wife, introduced evidence casting suspicion upon the transaction and warranting a suspicion of fraud, the burden of proof shifts to the defendant.

As was noted hereinabove, there is evidence from which it might be reasonably concluded that the dairy herd in question here remained under the actual control and in possession of defendant, Ivo Alston, even after the alleged transfers to his wife and son.

In Hewgley v. General Motors Acceptance Corporation, 39 Tenn. App. 553, 286 S. W. (2d) 355, among other things it was held that a seller's retention of personal property after sale, is prima facie evidence of fraud, and puts on the buyer the burden of proving the transaction was fair and bona fide.

Also see Maney v. Killough, 15 Tenn. 440, where it was said that possession remaining with a vendor after an absolute sale is prima facie evidence of fraud.

In a number of other cases it has been held that the continued possession of the vendor after an absolute conveyance of the property is evidence of fraud and is conclusive unless the possession is explained consistently with the deed of conveyance. See Callen v. Thompson, 11 Tenn. 475; Simpson v. Mitchell, 16 Tenn. 417; Grubbs v. Greer, 45 Tenn. 160 and Tennessee National Bank v. Ebbert & Co., 56 Tenn. 153.

Again, as regards the alleged transfer to the son, it was said in First Nat. Bank of Centerville v. Wilkins, 11 Tenn. App. 9, that the general rule is that the relationship of the parties in the transaction, as parent and

child, is not considered in law as a badge of fraud, but is simply a circumstance proper to be shown, and which, when shown, calls for close scrutiny and a clear explanation of the transaction.

In Aylor v. Richmond, 183 Tenn. 196, 191 S. W. (2d) 529, it was said that the fact that the grantor and grantee were father and son, respectively, was sufficient to justify a careful scrutiny of the conveyance of realty if the grantor was liable on a judgment debt, regardless of whether grantee was jointly liable thereon.

The opinion in Churchill v. Wells, 47 Tenn. 364, expresses the rule that is particularly applicable here. In that case it was held:

"Creditors have a right to expect that their debtor will deal fairly and in good faith with them; and if, upon the eve of an indebtedness about to be increased, and with a view thereto, and without the knowledge of the party extending the credit, the debtor makes a voluntary conveyance of property upon which he knows his contemplated creditor relies or has a right to rely, this is an actual fraud, producing the same results both upon existing and subsequent creditors; and such conveyance is not relieved from its fraudulent character by the fact that it has been registered, if the creditor has no actual notice, and the conveyance, without his negligence, operates as a surprise upon him."

## VI

■ It seems to us that the charges in the bill supported by proof offered by the complainant, were sufficient to cast a strong suspicion of fraud and a purpose

to hinder and delay the creditors of defendant Ivo Alston in the transfers brought in question here, and that a response and explanation on behalf of the defendants in order to dispel such suspicion was called for.

No such evidence was offered and we are of opinion that, therefore, the bill in this case should be sustained and the relief prayed for should be granted.

Accordingly, the decree of the learned Chancellor is affirmed insofar as it renders judgment against the defendant Ivo Alston, but said decree is modified to the extent that the transfers from Ivo Alston to his wife Louise Allen Alston, of the dairy herd in question, and of Louise Allen Alston to their son Richard Douglas Alston, are hereby set aside, and the cause is remanded to the Chancery Court for such further proceedings as are necessary and proper in the premises. The injunction heretofore issued will remain in force subject to future orders of the Chancellor consistent with the foregoing opinion and decree of this Court.

Modified and affirmed.

Felts and Hickerson, JJ., concur.