IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2009 Session

**BRENDA STONE, individually and derivatively in her capacity as a director of Appalachian Caverns Foundation v. SCOTT SMILE, ET AL.**

Appeal from the Chancery Court for Sullivan County
No. B0020971(M)     John S. McLellan, III, Chancellor

No. E2009-00047-COA-R3-CV  - FILED DECEMBER 18, 2009

The plaintiff initiated this action on behalf of a foundation of which she was formerly a director. She sought to reinstate a deed of trust securing a note belonging to the foundation and to set aside a fraudulent conveyance of the property that was subject to the deed of trust. The trial court found that the release of the deed of trust was improper and that the conveyance was fraudulent and, thus, reinstated the deed of trust and set aside the conveyance of the property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

James D. Culp, Johnson City, Tennessee, for Appellant, Scott Smile.

Joseph B. Lyle, Bristol, Tennessee, for Appellee, Brenda Stone.

**OPINION**

I. BACKGROUND

This case arose as a related matter in the aftermath of an earlier divorce between plaintiff, Brenda Stone, and her former husband, defendant Jerry Stone.[1]

The Appalachian Caverns Foundation ("Foundation") is a nonprofit company set up by William E. Hassinger in 1992 to operate a scenic attraction known as Appalachian Caverns. Both Mrs. Stone and Mr. Stone were members of the Board of Directors of the Foundation, having joined in approximately 1994. Mr. Stone served as President of the Foundation and Mrs. Stone served as

[1]Jerry Stone, Stone Investment Corporation, and Beth Smile were also defendants in this matter at the trial level. They are not participating in the appeal.

Secretary. Eventually, Mr. Hassinger resigned from the Board. The record reveals that the Foundation met irregularly.

Mr. Stone was also president of an entity known as Stone Investment Corporation ("Corporation"). On March 27, 2000, in his capacity as president of the Corporation, Mr. Stone executed a deed of trust on behalf of the Corporation, pledging as collateral certain property owned by the Corporation in Sullivan County -- 31 Seventeenth Street, Bristol -- to secure an indebtedness evidenced by a promissory note in the amount of $65,000 in favor of Mr. Hassinger. That deed of trust was recorded in the Register's Office for Sullivan County. The property -- -- is the property in dispute in this case. When Mr. Hassinger died in 2002, he left the promissory note to the Foundation.

The promissory note had a maturity date of September 30, 2001. However, the Corporation made no payments on the note -- it was past due and in default. As the years went by, no real effort was made to collect or enforce the balance owed. According to Mrs. Stone, Mr. Stone refused to allow the Foundation to proceed on the note and foreclose on the property. In August 2004, the Foundation sold the caverns and its tangible assets for $84,646.54.

The Stones were later divorced. In those proceedings, Mr. Stone received his interest in the Corporation as his sole property. In a collateral matter, Mrs. Stone obtained a default judgment against Mr. Stone and the Corporation in January 2007. In that action, to which the defendant here, Scott Smile, was not a party, Mr. Stone was found to have "acted illegally, oppressively and fraudulently with respect to the assets of the Foundation." The Foundation was found to be the holder of the promissory note and was held to be entitled to judgment against Mr. Stone for his alleged actions in the amount of $105,084.11.

Shortly before the default judgment was entered, Mrs. Stone discovered that a release of the aforementioned deed of trust had been signed on behalf of Foundation on or about October 30, 2006; Mr. Stone also had executed a quitclaim deed transferring the property at issue to Mr. Smile and his wife, Beth Smile. Mrs. Stone then filed this action pursuant to Tenn. Code Ann. § 48-56-401 (2002)[2] alleging that Mr. Stone's actions in signing the release deed on behalf of the Foundation and the quitclaim deed on behalf of Corporation were fraudulent and asking the trial court to set both of those instruments aside.

Mrs. Stone asserted in her complaint that the Smiles, based on their prior dealings with the Stones, "had actual knowledge of the divorce, the deadlock of the Foundation, the Note, Deed of Trust lien, Jerry Stone's lack of authority and the Enforcement Action." Mrs. Stone alleged that "the transfer of the Property to Scott Smile and Beth Smile was a sham transaction with the intent to delay, hinder or defraud the Foundation in the enforcement of the Note and Deed of Trust in direct violation of the Tennessee Uniform Fraudulent Transfer Act." In the alternative, Mrs. Stone claimed

---

[2]A proceeding may be brought in the right of a corporation to procure a judgment in its favor by any director. Tenn. Code Ann. § 48-56-401(a).

that "the transfer of the Property is by an insolvent transferor, and such conveyance is void pursuant to the Tennessee Uniform Fraudulent Transfer Act."

At trial, Mr. Stone claimed that the Hassinger note was, in effect, his property -- not that of the Foundation. He testified that he acquired the note as partial payment on earlier loans he had made to the Foundation. Both Mr. Stone and Mr. Smile testified that the conveyance of the property at 31 Seventeenth Street was in consideration of a long-running transaction between them going back to at least to 2003, during which time Mr. Smile made numerous advances of funds to Mr. Stone, and did work on the property at issue worth more than $10,000. Mr. Smile stated that he also performed services for Mr. Stone on other properties.

The Smiles admitted that, years ago, Mr. Stone had conveyed to them a nearby property at 16 Seventeenth Street by a promissory note and deed of trust. According to Mr. Smile, however, while there was no promissory note, deed of trust, or similar instrument between the parties regarding this transaction, he had performed his advances and services for Mr. Stone over a period of several years, and it had been agreed between them that Mr. Stone would either pay him or convey to him the building at 31 Seventeenth Street in satisfaction of the debt. He claimed that the payments were handled on the first transaction essentially the same as they were in the one at issue. Mr. Smile and his wife both testified regarding their attempt to reconstruct a payment history from handwritten ledgers; they arrived at a figure of $44,590 paid at various dates.[3] Mr. Smile stated that he believed approximately $7,000 of money and services had not been accounted for in the reconstructed ledger. He opined that the property at 31 Seventeenth Street is worth about $55,000. At the time of trial, however, the Smiles claimed that they were unable to locate the handwritten ledgers containing the information on which they based their claims.

Mr. Smile acknowledged that he had known the Stones for 20 to 30 years. He admitted to being a convicted felon, although no testimony was given as to the nature of the felony or when it occurred.

In rebuttal testimony, Mrs. Stone testified that she became aware that Mr. Smile was using the property at issue during 2004 or 2005. She recalled that during that time frame, she witnessed Mr. Smile had workmen in the building changing the locks. Mrs. Stone recalled that during her visit to the property, she and Mr. Smile discussed the divorce rather than the property matter. She asserted, however, that she did inform him there was a note on the property.

In rebuttal to Mr. Stone's testimony that she had refused to attend the Board meeting at which the Foundation voted to authorize the transfer of the Hassinger note to Mr. Stone, Mrs. Stone denied having received a notice of such meeting. She further noted that Mr. Stone had filed a Rule 17 Statement under oath in the divorce proceeding that did not include any indebtedness to Mr. Smile.

---

[3]The Smiles filed a cross claim against Stone Investment Corporation and Mr. Stone.

In its opinion, the trial court stated as follows:

> I . . . find that no consideration was paid in cash and/or services by Scott Smile and Beth Smile for the subject property described in the quitclaim deed dated November 29th, 2006 . . . : (a) The Smiles failed to produce a scintilla of evidence to corroborate the loans or services they contend was totaled in value of $44,590.00 for payment of the subject property for a period of 4/14/03 to 6/23/06; (b) Jerry Stone's February 27th, 2006 Rule 17 Statement filed in the divorce proceeding . . . fails to list a debt to the Smiles; (c) The subject transfer to the Smiles was not conducted by these parties in a manner similar to the transfer of February 27th, 1998 . . . ; (d) [Neither] [t]he quitclaim deed . . . nor the erroneous quitclaim deed . . . reflects the alleged $55,000.00 value of the transfer conducted by the parties; (e) The Court finds that it is more than coincidental that the subject transfer occurred within a short period of the time Jerry Stone was sued over the note, which was the subject of the case adjudicated by Judge Beck, particularly in consideration of the Judge's aforesaid findings and Jerry Stone's description of the event, and the Smile[s'] inability to substantiate their claim of loans and services to Jerry Stone.
>
> The Court finds that the Smiles are not bona fide purchasers due to not purchasing the subject property for valuable consideration . . . .
>
> Lastly, I find that the Smiles are awarded judgment against Stone Investment Corporation for the value of improvements to the property in the uncontested sum of $10,000.00, and may pursue a claim for value of services rendered for loans that they can document or which Jerry Stone admitted . . . in the amount of $44,590.00. . . .
>
> * * *

In its order, the trial court held as follows:

> 1. The Deed of Trust dated March 27, 2000 . . . together with the lien thereof is reinstated, the same as if it had not been released, and the Tennessee Release Deed dated October 30, 2006 . . . is deemed void and of no effect. . . .
>
> 2. The Quitclaim Deed dated November 29, 2006 from Stone Investment Corp. to Scott Smile and Beth Smile . . . is void and of no effect as if the same had never been recorded. . . .

-4-

3. Scott and Beth Smile have and recover a judgment against Stone Investment Corp. and Jerry Stone in the amount of fifty-four Thousand Five Hundred Ninety and 99/100 Dollars ($54,590.00).

\* \* \*

The trial court therefore found both transactions to be fraudulent and declared both the release deed and the quitclaim deed to be void and reinstated the 2000 deed of trust securing the promissory note in the amount of $65,000. Mr. Smile filed a timely appeal.

## II. ISSUE

The issue presented for review by Mr. Smile is as follows:

Did the trial court err in setting aside the release of the deed of trust and quitclaim deed executed by Jerry Stone on behalf of Stone Investment Corporation in favor of appellant, Scott Smile?

## III. STANDARD OF REVIEW

We review this case de novo on the record with a presumption of correctness of the trial court's finding of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's decisions regarding questions of law. *Wilson v. Wilson*, 984 S.W.2d 898, 900 (Tenn. 1998).

In a fraudulent conveyance case, the burden of proof is by a preponderance of the evidence. *James v. Joseph*, 1 S.W.2d 1017, 1019 (Tenn. 1928). The trial court's judgment is presumed correct and will be affirmed unless there is an error of law or unless the court finds that the evidence preponderates against the judgment. *Harwell v. Harwell*, 612 S.W.2d 182, 183 (Tenn. Ct. App. 1980).

## IV. DISCUSSION

This case arises under the Uniform Fraudulent Transfer Act, Tenn. Code Ann. § 66-3-301 (2004) et seq. Tenn. Code Ann. § 66-3-306 provides:

A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

Tenn. Code Ann. § 66-3-306(a). Thus, the elements of the claim are:

1) Creditor's claim arose before the transfer;
2) Debtor did not receive a reasonably equivalent value;
3) Debtor was insolvent or rendered insolvent by the transfer.

Tenn. Code Ann. § 66-3-303 provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." Tenn. Code Ann. § 66-3-304 defines fair consideration as "given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." In determining whether consideration is inadequate, a mathematical formula is not used. Courts consider the circumstances of the particular case. *See Bigger v. Fields*, No. M2004-01489-COA-R3-CV, 2005 WL 2043762, at *3-4 (Tenn. Ct. App. M.S., Aug. 24, 2005) (citing *Meacham v. Haley*, 270 S.W.2d 503 (Tenn. Ct. App. 1954)).

As this court noted in *Nadler v. Mountain Valley Chapel Business Trust*, No. E2003-00848-COA-R3-CV (Tenn. Ct. App. E.S., June 30, 2004),

> [a] conveyance is considered fraudulent in Tennessee if it is made "[w]ithout a fair consideration, leaving the grantor insolvent; or . . . [m]ade with actual intent to hinder, delay or defraud creditors." A determination of whether a conveyance is fraudulent is dependent upon the facts and circumstances of each case; such fraud is typically proven by circumstantial evidence. Such circumstantial indicators of fraud are often termed as "badge[s] of fraud" and have been described as "any fact[s] that throw[ ] suspicion on the transaction and call[ ] for an explanation."

*Id.* at *2 (internal citations omitted). Courts in Tennessee have held the following to be badges of fraud:

> 1. The transferor is in a precarious financial condition.
>
> 2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.
>
> 3. Inadequate consideration was given for the transfer.
>
> 4. Secrecy or haste existed in carrying out the transfer.
>
> 5. A family or friendship relationship existed between the transferor and the transferee(s).
>
> 6. The transfer included all or substantially all of the transferor's nonexempt property.

7. The transferor retained a life estate or other interest in the property transferred.

8. The transferor failed to produce available evidence explaining or rebutting a suspicious transaction.

9. There is a lack of innocent purpose or use for the transfer.

*Id.* (citing *In re Hicks*, 176 B.R. 466, 470 (Bankr. W.D. Tenn. 1995). The presence of one or more of the badges of fraud gives rise to a presumption of fraud and shifts the burden of disproving fraud to the defendant. *See Macon Bank & Trust Co. v. Holland*, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986) (citing *Gurlich's Inc. v. Myrick*, 388 S.W.2d 353 (Tenn. Ct. App. 1964); *Nashville Milk Producers, Inc. v. Alston*, 307 S.W.2d 66 (Tenn. Ct. App. 1957)).

As noted in *Bigger v. Fields*, "[w]hen reviewing the trial court's handling of "badges of fraud," it is important to recognize that they are to be considered from Mr. Smile's viewpoint. *See id.*, 2005 WL 2043762, at *5. "[W]hatever the intent of [Mr. Stone], if [Mr. Smile] entered into the transaction in good faith, gave adequate or fair consideration and had no knowledge or notice of the grantor's fraudulent intent, then the conveyance cannot be attacked by creditors." *Id.* Mr. Smile contends that he should be considered a purchaser in good faith.

The release of the deed of trust securing an existing unpaid debt evidenced by the note was clearly not in the best interest of the Foundation. Our review of the record reveals the following "badges of fraud" present in this case:

1. Mr. Stone and his Corporation were in a "precarious financial condition."

2. Mr. Stone and the Corporation knew there was or soon would be a large money judgment entered against the Corporation and that the Foundation would be looking to foreclose upon the property.

3. The Corporation did not receive adequate consideration for the property.

4. Mr. Stone, shortly after the Foundation's suit on the note, caused the Corporation to hastily release the deed of trust without the approval and knowledge of the Foundation's Board of Directors contrary to the interests of the Foundation. He transferred the property without the knowledge of Mrs. Stone or the other member of the Board.

5. Mr. Stone and Mr. Smile were good friends.

6. The transaction was more than coincidental. Mr. Stone did not produce any evidence explaining or rebutting a suspicious transaction.

7. There is a lack of an innocent purpose for the transfer.

Further, we find that the record shows the Foundation's claim against the Corporation arose before the Corporation's transfer of the property to the Smiles; the Corporation transferred the property without receiving a reasonably equivalent value in exchange for the transfer; and the Corporation was insolvent at the time of the transfer or became insolvent as a result of the transfer. The criteria of Tenn. Code Ann. § 66-3-306(a) is therefore satisfied. The evidence before us does not preponderate against the finding of the trial court. When viewed from the standpoint of what Mr. Smile knew or should have known, the evidence supports the trial court's conclusion.

## V. CONCLUSION

The trial court acted properly in setting aside the quitclaim deed and deed of trust. The trial court's judgment, therefore, is affirmed and this matter is remanded with costs of the appeal assessed against Appellant, Scott Smile.

_____
JOHN W. McCLARTY, JUDGE